UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

TRACEE WEST,

Plaintiff,

v.

RELIANT FINANCIAL CORPORATION dba GOLD ACCEPTANCE, a California Corporation; ALLIANCE CREDIT SERVICES, INC., a California Corporation; SMITH AND ASSOCIATES; EQUIFAX INFORMATION SERVICES, LLC; EXPERIAN INFORMATION SOLUTIONS, INC.; and Does 1 through 10 inclusive,

Defendant.

Case No.: 20cv678-JAH-JLB

**ORDER GRANTING MOTION TO COMPEL ARBITRATION [Doc. No. 10]**

## INTRODUCTION

Plaintiff Tracee West ("Plaintiff") brought this suit in the Superior Court of California in September 2019. Plaintiff alleges violations of numerous state and federal laws, as well as common law torts, against Defendants Reliant Financial Corporation dba Gold Acceptance ("Defendant Reliant") and Alliance Credit Services, Inc. ("Defendant

Alliance") (collectively "Defendants"). In April 2020, Defendant Experian Information Solutions, Inc. removed this case to federal court, and Defendants Reliant and Alliance filed a Motion to Compel Arbitration and request a Stay of the proceedings against them. *See* Doc. No. 10. The Motion has been fully briefed. For the reasons set forth below, the Court **GRANTS** Defendants' Motion.

## BACKGROUND

In July 2015, Plaintiff and Dehesa Auto Sales LLC ("Dealer"), who is not a party to the action, entered into a Retail Installment Sales Contract ("RISC") concerning Plaintiff's purchase of a used vehicle. The RISC contains an arbitration agreement which requires parties to the contracts, as well as their employees, agents, successors or assigns, to arbitrate all claims arising out of the transaction. The agreement was immediately assigned to Defendant Reliant, who subsequently assigned the RISC to Defendant Alliance. Sometime in 2016 Plaintiff fell behind on her payments under the RISC. In December 2016, Defendant Reliant received a Small Claims Judgment against Plaintiff, at which point Defendant Alliant allegedly assigned the RISC back to Defendant Reliant.

On January 10, 2020, Plaintiff filed an Amended Complaint in San Diego Superior Court, alleging violations of the Rosenthal Fair Debt Collection Practices Act, California Civil Code section 1780, Fair Debt Collection Practices Act, 15 U.S.C. § 1692, the Fair Credit Reporting Act, 15 U.S.C. § 1681, the California Consumer Credit Reporting Agency Act, California Civil Code § 1785, and conversion against Defendants. On February 28, 2020 Defendants' counsel sent a letter to Plaintiff's counsel requesting arbitration of her claims through AAA pursuant to the RISC. On March 2, 2020 Plaintiff's counsel sent Defendants' counsel an email indicating Plaintiff would be willing to submit to arbitration through JAMS, pursuant to the ASC contained in the Arbitration Provision. On March 3, 2020 Defendants' counsel responded, objecting to arbitration through JAMS also pursuant to the ASC.

On March 6, 2020 Defendants filed a motion to compel arbitration in the Superior Court case, which was identical to the Motion before the Court in the immediate action.

On April 8, 2020, Defendant Experian Information Solutions, Inc. removed the state court action to federal court, forming the case now before the Court. On June 1, 2020, after unsuccessfully conferring with Plaintiff's counsel to select an arbitrator a second time, Defendants again filed a Motion to Compel Arbitration.

## LEGAL STANDARD

The Federal Arbitration Act ("FAA"), 9 U.S.C. § 1, *et seq.*, reflects a strong public policy in favor of arbitration. The FAA applies to "any contract evidencing a transaction involving commerce," and provides that any arbitration agreement within its scope "shall be valid, irrevocable and enforceable." 9 U.S.C. § 2. "A party aggrieved by the alleged…refusal of another to arbitrate" may petition any federal district court for an order compelling arbitration. *Id.* at § 4. Congress enacted the FAA to overcome "widespread judicial hostility to arbitration agreements," and to ensure that courts enforce valid agreements to arbitrate. *See AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011). "The FAA 'leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration'" if it concludes the parties have agreed to arbitrate the dispute. *Kilgore v. KeyBank Nat'l Ass'n*, 673 F.3d 947, 955 (9th Cir. 2012) (quoting *Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 218 (1985) (emphasis in original)). "The court's role under the [FAA] is therefore limited to determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." *Kilgore*, 673 F.3d at 955. If the answer to both questions is yes, the court is required to enforce the arbitration agreement. *Id.*

Furthermore, recent Supreme Court precedent makes clear that parties may delegate to the arbitrator even the threshold issue of arbitrability. *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 530 (2019) ("Just as a court may not decide a merits question that the parties have delegated to an arbitrator, a court may not decide an arbitrability question that the parties have delegated to an arbitrator."). "[P]arties may delegate threshold arbitrability questions to the arbitrator, so long as the parties' agreement

does so by 'clear and unmistakable' evidence. *Id.* (quoting *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944, 115 S. Ct. 1920, 131 L. Ed. 2d 985 (1995). In this situation, the court first "determines whether a valid arbitration agreement exists." *Id.* If it does, "and if the agreement delegates the arbitrability issue to an arbitrator, a court may not decide the arbitrability issue." *Id.*

When determining whether a valid and enforceable agreement to arbitrate has been established for the purposes of the FAA, the Court should apply "ordinary state-law principles that govern the formation of contracts to decide whether the parties agreed to arbitrate a certain matter." *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995); *Circuit City Stores, Inc. v. Adams*, 279 F.3d 889, 892 (9th Cir. 2002). Because Plaintiff is a resident of this state and the RISC is governed by both Federal and California state law (*See* Doc. No. 10, Schnablegger Decl., Ex. 1), the Court looks to the state's law to determine whether there is a valid arbitration agreement between the parties.

California law provides that the elements for a viable contract are "(1) parties capable of contracting; (2) their consent; (3) a lawful object; and (4) sufficient cause or consideration." *United States ex rel. Oliver v. Parsons Co.*, 195 F.3d 457, 462 (9th Cir. 1999) (citing Cal. Civ. Code § 1550; *Marshall & Co. v. Weisel*, 242 Cal. App. 2d 191, 196 (1966)). An arbitration agreement may be "invalidated by generally applicable contract defenses, such as fraud, duress, or unconscionability, but not by defenses that apply only to arbitration or that derive their meaning from the fact that an agreement to arbitrate is at issue." *Concepcion*, 563 U.S. at 339 (2011); *see also* Cal. Code Civ. Proc. § 1281 (explaining an arbitration agreement may only be invalidated upon the same "grounds as exist for the revocation of any contract").

As the parties seeking to compel arbitration, Defendants have the initial burden of demonstrating that a valid agreement exists to arbitrate the claims at issue and Plaintiff then bears the burden of proving any defense. *See Bridge Fund Capital Corp. v. Fastbucks Franchise Corp.*, 622 F.3d 996, 1005 (9th Cir. 2010) (noting that the party seeking to compel arbitration "bears the burden of proving the existence of a valid arbitration

agreement by the preponderance of the evidence, and a party opposing the petition bears the burden of proving by a preponderance of the evidence any fact necessary to its defense.") (quoting *Engalla v. Permanente Med. Grp., Inc.*, 15 Cal. 4th 951, 972 (1997).

## DISCUSSION

### 1. Evidentiary Objections

Plaintiff contends that due to factual inaccuracies and lack of evidentiary support, Mr. Schnablegger's Declaration must be stricken, and therefore the Court cannot find that the parties are bound to any arbitration agreement. Furthermore, Plaintiff and Defendants have both submitted notices of evidentiary objections pertaining to supporting documents submitted with the others' respective briefing papers. The Court addresses the collective objections in kind.

In support of the Motion to Compel Arbitration, Defendants submitted the declaration of Matthew Schnablegger who is an authorized agent for Defendant Reliant and its custodian of records. (Doc. No. 10-2). Plaintiff argues the Court cannot find an arbitration agreement applies, because of factual inaccuracies and lack of evidentiary support contained in Defendants' supporting declarations. However, Plaintiff cites no law or rule that would show how Defendants have failed to establish the existence of a binding arbitration agreement. Plaintiff also does not dispute her signature on the submitted exhibit which Defendants claim is the agreement entered into by Plaintiff and the Dealer. Moreover, in her Response to Defendants' Motion, Plaintiff frequently cites the submitted exhibit as support for the argument that she is entitled to select her arbitrator.

Plaintiff argues however, that Mr. Schnablegger's declaration is insufficient, because it fails to identify when it was executed pursuant to 28 U.S.C. § 1746, and because it is "not signed as that term is generally understood.[1]" The Court acknowledges that Mr.

[1] To be adequate, the declaration must comply with the requirements of 28 U.S.C. § 1746, and must conclude with a valid signature. *See* 28 U.S.C. § 1746; *see also, e.g.*, *Wilson v. City of Merced*, No. CV F07-1235LJODLB, 2008 WL 4737159, at *4 (E.D. Cal. Oct. 28, 2008) ("An unsigned declaration is inadmissible to oppose a [motion for] summary judgment.").

Schnablegger's signature does not comply with this Court's rule regarding electronic signatures – Section 2(f) of the Court's Electronic Case Filing Administrative Policies and Procedures Manual. However, the Court notes that even if it were to strike Mr. Schnablegger's declaration, it could not similarly strike Mr. Sifer's declaration,[2] which provides the same document alleged to be the RISC in "Exhibit 3."

Accordingly, Plaintiff may not avoid this Court finding that she is bound to arbitrate claims stemming from her purchase of the vehicle. As determined below, the Court finds all of Plaintiff's claims against Defendants Reliant and Alliance are bound by the submitted arbitration agreement. Therefore, even if the Court were to strike Mr. Schnablegger's declaration, the agreement plainly contemplates the Dealer's assigns, which both Defendant Reliant and Defendant Alliance claim to be. Accordingly, all factual contentions contained in Mr. Schnablegger's declaration are a matter for the arbitrator to decide at the first instance. *See Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 445-46 (2006). The document submitted as "Exhibit 3" of Mr. Sifer's declaration satisfies Defendant's burden of establishing the agreement's existence, and the RISC governs the Court's determination of Defendants' Motion.

Plaintiff's and Defendants' remaining evidentiary objections go to the rules of the proposed arbitral forums and the factual contentions underlying Plaintiff's complaint. As discussed below, the Court finds the parties' claims are subject to a binding arbitration agreement, which proscribes the method for selecting an arbitrator. Accordingly, the Court does not have jurisdiction to hear the parties' fact-based objections. *See AT&T Techs. v. Communs. Workers of Am.*, 475 U.S. 643, 649 (1986) ("[I]n deciding whether the parties have agreed to submit a particular grievance to arbitration, a court is not to rule on the potential merits of the underlying claims.). Because the Court does not at this time decide

---

[2] Mr. Sifer's declaration, as the named CM/ECF attorney, is scrutinized under different standards. His declaration is adequate.

to appoint an arbitrator for the parties, the Court will also not consider the parties objections to either arbitral organization.

**2. Motion to Compel Arbitration**

Defendants argue that because the RISC contains a mandatory arbitration clause, Plaintiff is bound to arbitrate any claims stemming from the purchase of her vehicle. Plaintiff does not argue that the parties were not capable of consent, did not consent, or that there was not a lawful object to the contract. Further, Plaintiff does not argue there was insufficient cause or consideration for the contract entered into for the purchase of the vehicle. Rather, Plaintiff contends only that the Arbitrator Selection Clause ("ASC") is unconscionable, and therefore unenforceable.

The Arbitration Provision ("AP") contained in the RISC expressly provides: "If any part of this Arbitration Provision, other than waivers of class action rights, is deemed or found to be unenforceable for any reason, the remainder shall remain enforceable." Accordingly, if the ASC is unconscionable as Plaintiff claims, the clause may be severed and the remaining provision enforced. *See Armendariz v. Found. Health Psychcare Servs., Inc.*, 24 Cal. 4th 83, 121-22 (2000) (citing Civil Code section 1670.5). Therefore, the Court addresses the ASC separately below.

With regard to the remaining AP, the Court finds that there is a valid arbitration agreement in existence. The force of the RISC's AP reads as follows.

> Any claim or dispute, whether in contract, tort, statute or otherwise (including the interpretation and scope of this Arbitration Provision, and the arbitrability of the claim or dispute), between [Plaintiff] and [Dealer] or our employees, agents, successors or assigns, which arises out of or relates to [Plaintiff's] credit application, purchase or condition of this vehicle, this contract or any resulting transaction or relationship (including any such relationship with third parties who do not sign this contract) shall, at your election, be resolved by neutral, binding arbitration and not by a court action.

Doc. No. 10-3, Sifer's Decl., Ex. 3. at 11.

The express language of the AP evinces an unmistakable intent to delegate the issue of arbitrability to the arbitrator, and the Court therefore "has no power to decide the arbitrability issue." *Schein*, 139 S. Ct. at 529. Accordingly, **IT IS HEREBY ORDERED** Defendants' Motion to Compel Arbitration is **GRANTED**.

**3. Validity of the ASC**

Plaintiff argues that the ASC is unconscionable and therefore requests the Court appoint her desired arbitration firm pursuant to 9 U.S.C. § 5. The disputed portion reads: "You may choose the American Arbitration Association, 1633 Broadway, 10th Floor, New York, New York 10019 (www.adr.org), or any other organization to conduct the arbitration *subject to our approval.*" Doc. No. 10, Schnablegger Decl., Ex. 1 at 8. Plaintiff asserts that Defendants' refusal to arbitrate with her selected organization, JAMS, was unreasonable, and that therefore Defendants' refusal makes the clause's delegation of choice to Plaintiff illusory.

Under California law, an arbitration agreement may be invalidated for the same reasons as other contracts. Cal. Code Civ. Proc. § 1281. As such, a finding of unconscionability with regard to an arbitration provision renders the provision unenforceable. *See Armendariz,* 24 Cal. 4th at 113-14. Because unconscionability is a contract defense, the party asserting the defense bears the burden of proof. *Sonic-Calabasas A, Inc. v. Moreno*, 57 Cal. 4th 1109, 1148 (2013) (*quoting Chin v. Advanced Fresh Concepts Franchise Corp.*, 194 Cal.App.4th 704, 708 (2011).

"'One common formulation of unconscionability is that it refers to 'an absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party.' As that formulation implicitly recognizes, the doctrine of unconscionability has both a procedural and a substantive element, the former focusing on oppression or surprise due to unequal bargaining power, the latter on overly harsh or one-sided results.'" *Baltazar v. Forever 21, Inc.*, 62 Cal. 4th 1237, 1243, 200 Cal. Rptr. 3d 7, 12, 367 P.3d 6, 11 (2016) (quoting *Sonic-Calabasas A, Inc. v. Moreno*, 57 Cal.4th 1109, 1133 (2013)).

A. Procedural Unconscionability

Plaintiff does not argue that there was any element of oppression or surprise as a result of unequal bargaining power, but instead argues that the AP is procedurally unconscionable because it is contained in an adhesion contract. Defendants do not dispute the adhesive nature of the contract, but argue instead that adhesive contracts are not per se unenforceable.

An adhesion contract is a standardized contract, imposed and drafted by the party of superior bargaining strength, which relegates to the subscribing party only the opportunity to adhere to the contract or reject it. *Armendariz* at 113. Absent a showing that a contract involved surprise, oppression, or otherwise falls outside of the reasonable expectations of the weaker party, an adhesion contract establishes only a minimal degree of procedural unconscionability. *See Forever 21, Inc.*, 62 Cal. 4th at 1244; *Armendariz* at 113. Although Plaintiff argues the RISC is an adhesion contract, she fails to argue that she was without bargaining power or identify any particular aspect of the contract formation that plainly shows the RISC is in fact adhesive. Therefore, the Court has only the RISC itself to look at, which is clearly a form contract written by the Dealer. However, "nothing prevents purchasers of used vehicles from bargaining with dealers, even though dealers use form contracts." *Crippen v. Cent. Valley RV Outlet*, 124 Cal. App. 4th 1159, 1166 (2004). Accordingly, the Court does not find Plaintiff has not met her burden of establishing procedural unconscionability.

Even assuming the RISC is an adhesion contract, and that Plaintiff had therefore established a minimal degree of procedural unconscionability, Plaintiff faces a tougher challenge establishing substantive unconscionability. *Gatton v. T-Mobile USA, Inc.*, 152 Cal. App. 4th 571, 585 (2007) (holding that absent unusual circumstances, use of a contract of adhesion establishes a minimal degree of procedural unconscionability notwithstanding the availability of market alternatives [but i]f the challenged provision does not have a high degree of substantive unconscionability, it should be enforced.)

B. Substantive Unconscionability

Plaintiff argues the ASC is substantively unconscionable, because it gives Defendants control over selection of the arbitrator. Defendants respond first by arguing that the RISC contains the "modicum of bilaterality" required by *Armendariz*. *Armendariz* at 8. However, the bulk of Defendants' response is that the California Supreme Court, in *Sanchez v., Valencia Holding Co., LLC*, also analyzed a similar arbitration provision, and did not find substantive unconscionability existed there. 61 Cal. 4th 899 (2015).

Defendants' argument regarding bilaterality was made generally regarding the entire RISC. Insomuch as that argument does not specifically address the ASC, it is unpersuasive. *Buckeye Check Cashing*, 546 U.S. at 445-46 ("[A]s a matter of substantive federal arbitration law, an arbitration provision is severable from the remainder of the contract, [and] unless the challenge is to the arbitration clause itself, the issue of the contract's validity is considered by the arbitrator in the first instance."). Furthermore, Defendants misplace their reliance on *Sanchez*, as the arbitration provision before that court did not specifically address arbitrator selection. *Sanchez*, 61 Cal. 4th at 908. For that reason, *Sanchez* is not instructive in determining whether ASC is substantively unconscionable.

In support of her own argument, Plaintiff cites a case from the Supreme Court of Hawaii, which is not binding on this Court, and *Garcia v. Kakish*, 2017 WL 2773667, at *8 (E.D. Cal. June 27, 2017). There the court analyzed a virtually identical arbitration provision and found that the clause subjecting arbitrator selection to the seller's approval was substantively unconscionable. However, the *Garcia* court questionably cited only *Stirlen v. Supercuts, Inc.*, 51 Cal.App.4th 1519, 1532, as support for its finding.

The arbitration provision at issue in *Stirlen* is distinct from both the provision at issue in *Garcia* and from the AP in the instant action. *Stirlen* at 1530. Moreover, though an arbitrator selection clause was at issue in *Stirlen*, the court's analysis did not reach that clause, nor did the court suggest the clause contributed whatsoever to the ultimate finding of unconscionability. *Id* at 1534-43. As it appears the *Garcia* court based its own determination of substantive unconscionability on *Stirlen*, without further explanation, the Court finds *Garcia* unpersuasive and Plaintiff's reliance on *Garcia* unavailing.

Though erroneously relied on by a sister court, the Court finds the discussion of unconscionability in *Stirlen* illustrative. There, the court found the arbitration provision was substantively unconscionable, because it "provide[d] the employer more rights and greater remedies than would otherwise be available and concomitantly deprive[d] employees of significant rights and remedies they would normally enjoy." *Stirlen* at 1542. Specifically, the arbitration provision provided the employer a unilateral right to litigate rather than arbitrate its claims, yet also did not deprive the employer of common law or statutory remedies. *Id* at 1537, 1539-40. Conversely, the agreement deprived the employee of any right to litigate, denied him punitive damages for tort claims, and precluded equitable and compensatory relief from statutory claims, as well as statutory awards. *Id* at 1539-40.

Moreover, in the provision at issue, the employees waived any objections to the jurisdiction of the courts selected by the employer and to service by those courts, while also submitting to the loss of their job, salary, and all other benefits during the pendency of litigation without penalty to the employer, even if the employer's claims proved unmeritorious. *Id.* at 1542. However, the final blow in *Stirlen* was the imposition of a one-year statute of limitation on employee claims, "not [] subject to tolling, equitable or otherwise," wherein failure to bring a claim within the prescribed time constituted a waiver of all rights and claims arising out of such disputes. *Id.*

The ASC in the instant action does not deal with such manifest one-sidedness, nor does it grant Defendants "full power over the selection of the arbitrator," as Plaintiff suggests. Rather, it leaves to Plaintiff a choice between finding an organization Defendants approve or selecting AAA, an organization expressly contemplated by the agreement. It does not, however, permit Defendants to choose an unidentified organization. While the ASC clearly bestows on Defendants an additional right than would otherwise be available and simultaneously deprives Plaintiff of a right she would otherwise enjoy, it does not clearly yield results that are overly harsh or so one-sided as to be fundamentally unfair. At best, Plaintiff has established a slight degree of substantive unconscionability.

Plaintiff also argues that Defendants' rejection of JAMS makes the promise of her ability to choose the arbitrator illusory. If Plaintiff had established that Defendants always reject consumer choice of arbitrator in bad faith, that would strengthen her argument that the ASC is substantively unconscionable. However, Plaintiff's reference to only one such instance does not establish such a pattern. Having demonstrated only slight degrees of procedural and substantive unconscionability, Plaintiff has not met her burden of showing the ASC is so unconscionable as to avoid its enforcement.

C. Illusory Promise

Plaintiff also contends that Defendants' rejection of her choice of arbitrator, JAMS, was not made in good faith, and as such the promise that she could choose the arbitrator is illusory. In *Asmus v. Pac. Bell*, the California Supreme Court stated its position on the enforceability of illusory promises:

> It has been thought [] that promissory words are illusory if they are conditional on some fact or event that is wholly under the promisor's control and bringing it about is left wholly to the promisor's own will and discretion. This is not true, however, if the words used do not leave an unlimited option to the one using them. It is true only if the words used do not leave an unlimited option to the one using them. It is only true if the words used do not in fact purport to limit future action in any way.

*Asmus*, 23 Cal. 4th 1, 16, (2000) (quoting 2 Corbin on Contracts (1995) § 5.32, pp. 175-176).

Under *Asmus*, the ASC is illusory and therefore unenforceable, because it grants Defendants the unlimited option to reject any arbitrator Plaintiff selects. However, a string of caselaw demonstrates the rule is not so straightforward. In *Cal. Lettuce Growers v. Union Sugar Co.*, the Supreme Court held that "where a contract confers on one party a discretionary power affecting the rights of the other, a duty is imposed to exercise that discretion in good faith and in accordance with fair dealing." *Cal. Lettuce Growers*, 45 Cal. 2d 474, 484, (1955). However, when conduct is expressly authorized by provisions of a contract, no covenant of good faith and fair dealing may be implied which forbids such

conduct. *Carma Developers (Cal.), Inc. v. Marathon Dev. Cal., Inc.*, 2 Cal. 4th 342, 374 (1992) (quoting *VTR, Incorporated v. Goodyear Tire & Rubber Company* 303 F.Supp. 773, 777-778 (S.D.N.Y. 1969)). The conclusion to be drawn from the two rules is that "courts are not at liberty to imply a covenant directly at odds with a contract's express grant of discretionary power except in those relatively rare instances when reading the provision literally would…result in an unenforceable, illusory agreement." *Third Story Music, Inc. v. Waits*, 41 Cal. App. 4th 798, 808 (1995).

As stated, a literal reading of the ASC suggests a finding that it is illusory, because it plainly permits Defendants to reject Plaintiff's choice on any grounds, effectively depriving Plaintiff of any purported choice. Therefore, the ASC is unenforceable unless Defendants' approval is subject to the implied covenant of good faith and fair dealing. *Third Story Music* at 808. Defendants do not dispute that any objection to Plaintiff's choice must be made in good faith, and it is evident from their moving papers they believe their objection satisfied that requirement. Upon review of the record and the parties briefing papers, the Court finds Defendants' rejection of JAMS was made in good faith, and as such should be honored.

Counsel for Defendants offered an identical justification for its rejection of JAMS on at least four separate occasions: in the initial email responding to Plaintiff's selection of JAMS, in their Motion to Compel Arbitration submitted to the Superior Court for the County of San Diego, in their Motion to Compel Arbitration in the instant action, and in their Reply to Plaintiff's Response to that Motion. Each time, Defendants explained that it viewed the forum costs of JAMS as unfavorably high, that JAMS alters the AP such that costs would not be shared equally as expressly agreed upon, and that it found AAA's rules and protocols more favorable to a neutral arbitration, complete with a "Consumer Due Process Protocol." To the extent approval of JAMS would expressly contravene the cost-sharing terms of the AP, Defendants had a right to deny Plaintiff's choice. Furthermore, Defendants' justification, issued consistently each time, is thorough, reasonable, and goes beyond requirements of good faith.

Plaintiff cites the Minute Order from a case in which Defendant Reliant's rejection of JAMS was found to be lacking good faith in support of her contention that Defendants' rejection in the instant case is similarly lacking. *See* Doc. No. 17, Henderson Decl., Ex. 20. The Court cannot say what reasons for rejecting JAMS were given in that case, nor can the Court infer how that court reached its decision. Furthermore, a single occurrence does not a pattern make, and is therefore not sufficient to override the appearance of good faith demonstrated by Defendants in this case.

**4. Appointment of Arbitrator Pursuant to 9 U.S.C. § 206**

Plaintiff requests that in any event, the Court appoint JAMS as its arbitrator pursuant to 9 U.S.C. § 206. Defendants request that the Court order Plaintiff to arbitrate her claims before AAA. The Court notes that § 206 applies only to arbitration agreements which fall under the Convention on the Recognition and Enforcement of Foreign Arbitral Awards, and pursuant to 9 U.S.C. § 202, agreements arising out of a relationship which is entirely between citizens of the United States, which is the case here, do not fall under the Convention. As such, the Court may not appoint an arbitrator under that statute.

Though neither party genuinely raises it, the Court does have power under 9 U.S.C. § 5 to appoint an arbitrator. However, the Court is only authorized to make such appointment when the arbitration provision does not provide a method for appointing an arbitrator, when the parties have failed to follow the provided method, or if there has been a lapse in the naming of an arbitrator. 9 U.S.C. § 5. The Court finds that none of these conditions apply.

As has been discussed, the AP clearly provides a procedure for selecting an arbitrator. Furthermore, both the statute and applicable case law support the enforcement of that procedure. 9 U.S.C. § 5; *Am. Express Co. v. Italian Colors Rest.*, 570 U.S. 228, 233 (2013) ("[C]ourts must 'rigorously enforce' arbitration agreements according to their terms, including terms that 'specify with whom [the parties] choose to arbitrate their disputes.'"); *Pac. Reinsurance Mgmt. Corp. v. Ohio Reinsurance Corp.*, 814 F.2d 1324, 1329 (9th Cir. 1987) ("In the enactment of § 5 [...] Congress has evinced its intention of

facilitating arbitration when impasse in selection of an umpire has been reached. This section still respects the agreements of the parties, by requiring compliance with those agreements when possible.).

Finally, by the terms of the agreement, Plaintiff agreed that either AAA *or* an organization of her choosing would hear her disputes, but that organization is subject to Defendants' good faith approval. Accordingly, any arbitration before AAA would not violate the agreement, and the Court need not appoint a substitute arbitrator. *See Angelini v. Navient Sols., LLC*, 2019 WL 9464277, at *3 (C.D. Cal. Apr. 9, 2019) (citing *Robinson v. EOR-ARK, LLC*, 841 F.3d 781, 784 (8th Cir. 2016)). Accordingly, **IT IS HEREBY ORDERED** the parties' request that the Court appoint their arbitrator is **DENIED**. **IT IS FURTHER ORDERED**, the parties shall appoint an arbitrator in compliance with the terms of the Arbitration Provision.

Additionally, one of Plaintiff's objections to arbitration under AAA is that it does not require arbitrators to take an oath or witnesses to testify under oath. In Defendants' reply, they agreed as part of this Order that in the arbitral proceeding any arbitrator will swear an oath and all witnesses will testify under oath. Accordingly, **IT IS FURTHER ORDERED** that such conditions shall be imposed on the parties' arbitral proceedings.

**5. Entry of Stay**

The FAA provides, "If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement..." 9. U.S.C. § 3 Defendants have made such a request, and the having found such an arbitration agreement exists, **IT IS HEREBY ORDERED** this action is **STAYED** pending completion of arbitration.

///

///

## CONCLUSION

For the foregoing reasons, **IT IS HEREBY ORDERED**:

1. Defendants' Motion to Compel Arbitration is **GRANTED**;
2. Defendants' Request for a Stay of Action pursuant to 9 U.S.C. § 3 is **GRANTED**;
3. Defendants' Joint Motion for a Stay (*See* Doc. No. 55) is **DENIED AS MOOT**.

**IT IS SO ORDERED.**

DATED: May 4, 2021

JOHN A. HOUSTON
UNITED STATES DISTRICT JUDGE